UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br>v.<br><br>TOM SIMEO,<br><br>Defendant. | No. 19-cv-8621 (PGG)<br><br>AMENDED COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff, the Securities and Exchange Commission (the "SEC" or the "Commission"), alleges as follows against Defendant Tom Simeo ("Simeo"):

## SUMMARY OF ALLEGATIONS

1. Between November 2014 and May 2016, Simeo, the former Chief Executive Officer ("CEO"), Director, Chairman, and Treasurer of public company Viking Energy Group, Inc., f/k/a Viking Investments Group, Inc. ("Viking" or the "Company"), made materially misleading disclosures in Viking's periodic reports regarding Viking's purported Chief Financial Officer ("CFO").

2. Viking's public filings with the SEC repeatedly and falsely represented that an individual named Guangfang "Cecile" Yang was Viking's CFO. In addition, certain certifications mandated by the Sarbanes-Oxley Act of 2002 ("SOX certifications") that accompanied Viking's periodic reports, also filed with the Commission, falsely represented that Yang had performed an assessment of Viking's internal control structure and procedures for financial reporting ("ICFR"), reviewed Viking's annual and quarterly reports, and concluded that

those reports did not contain any untrue statement of a material fact or omit to state a material fact.

3. Viking's SEC filings on Forms 10-K and 10-K/A also repeatedly stated that the "Company's internal control over financial reporting is a process designed under the supervision of the Company's Chief Executive Officer and Chief Financial Officer to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the Company's financial statements for external purposes in accordance with U.S. generally accepted accounting principles or GAAP."

4. In reality, Yang did not perform any functions as Viking's CFO, and the Company effectively operated without a CFO during that period.

5. Simeo, as the sole point of contact between Yang and the Company, created the false appearance that Yang served as CFO by repeatedly affixing Yang's signature to Viking's periodic reports and SOX certifications. Simeo also signed each of the filings falsely identifying Yang as Viking's CFO, and signed SOX certifications of his own.

6. Aside from Yang's purported signatures on Viking's filings, there is no evidence that Yang performed any activities as Viking's CFO from at least November 2014 through Yang's resignation in July 2016. Indeed, other than a single email to Simeo from someone purporting to be "Cecile," neither Viking nor Simeo has produced any documentary evidence that anyone from Viking, or its auditors, had ever communicated with Yang.

7. During the relevant period, the Company raised approximately $2 million from investors through private placements.

8. Simeo's materially false statements, omissions, and deceptive acts violated Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§

77q(a)(1) and 77q(a)(3)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5], and unless enjoined, Simeo will continue to violate these securities laws.  Thus, based upon these violations, the Commission seeks a permanent injunction, an officer and director bar, a penny stock bar, and a civil monetary penalty.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 20(d)(1) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d)(1) and 77v(a)], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

10. Venue is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Simeo resides in the Southern District of New York, and a substantial portion of the conduct alleged herein occurred within the Southern District of New York.

11. Simeo, directly or indirectly, made use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the acts, practices, and courses of business alleged herein, certain of which occurred within the Southern District of New York.

## DEFENDANT

12. **Tom Simeo**, age 68, resides in New York, New York.  According to Viking's public filings, Simeo served as CEO, Treasurer, Director, and Chairman of the Board of Viking from August 15, 2008 until December 12, 2014, when Simeo resigned as Viking's CEO and was

appointed as Viking's Executive Chairman. Simeo also served as Viking's interim CFO from July 5, 2016 until May 16, 2017. In May 2017, Simeo resigned from the Company.

## RELEVANT ENTITIES AND PERSONS

13. **Viking Energy Group, Inc.** is a publicly traded company incorporated in Nevada, with its sole office located in Houston, Texas. The Company was named Viking Investments Group, Inc. from June 13, 2012 until March 17, 2017, when it changed its name to Viking Energy Group, Inc. From November 2014 through May 2016, Viking's office was located in New York, New York. Viking's common stock is quoted on OTC Markets Group's OTCQB under the symbol "VKIN." According to its 2018 annual report on Form 10-K, Viking's business plan "is to engage in the acquisition, exploration, development and production of oil and natural gas properties."

14. **Guangfang "Cecile" Yang**, age unknown, may reside in Shanghai, China. Viking's filings made with the Commission disclosed that Yang was Viking's CFO and a member of its Board of Directors from February 7, 2013 until her resignation on July 5, 2016.

## FACTS

**I.     Simeo Hires Yang in February 2013 and Obtains Yang's Standing Resignation Letter and a Power of Attorney to Sign Filings on Her Behalf**

15. Simeo first became involved with Viking's predecessor company, Sparta Ventures Corp., when, in 2008 after several name changes, the Company was merged into an entity controlled by Simeo. Prior to 2014, Viking, under Simeo's leadership, unsuccessfully tried to develop start-up companies in China. In 2014, the Company's current CEO joined Viking to convert the Company into an oil and gas business.

4

16. Simeo's former wife introduced him to Yang in Shanghai, China in 2013, when Simeo was operating Viking as an incubator for Chinese companies. Simeo hired Yang as CFO shortly after this introduction.

17. At the time that Yang was appointed as Viking's CFO and a member of its board, Yang signed and provided to Simeo a "standing resignation letter" addressed to "the directors and officers of Viking Investments Group, Inc." in which she "irrevocably" agreed to resign as CFO and director "[u]pon notification that the Company accepted [her] resignation." The Company never disclosed in its filings that Yang had been retained subject to a standing resignation letter.

18. One day after her appointment as Viking's CFO, Yang also executed a power of attorney in favor of Simeo, authorizing Simeo to affix Yang's signature to any and all documents – including filings with the SEC – that Yang was required to review and sign as Viking's CFO and board member. The Company never disclosed in its filings that Yang had executed a power of attorney in favor of Simeo.

## II. Viking Identifies Yang as its CFO and BOD Member from February 2013 through July 2016

19. Beginning with a current report on Form 8-K, filed with the Commission on February 13, 2013, Viking, through Simeo, disclosed that Yang was its CFO and a member of its Board of Directors. In total, the Company identified Yang as its CFO in twenty annual and quarterly reports filed with the Commission during her purported tenure at the Company, which ended with the announcement of her resignation on July 5, 2016.

20. Simeo signed, either as Viking's CEO or as Viking's Executive Chairman, each of the filings disclosing Yang as CFO, as well as SOX certifications accompanying those filings.

21.     "SOX certification" refers to the requirement, pursuant to Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14] and Sarbanes-Oxley Act Sections 302 and 906 [15 U.S.C. § 7241 and 18 U.S.C. § 1350], that a principal financial officer certify that a public company's annual or quarterly report filed with the Commission does not contain any untrue material statements or omissions, that any fraud involving management with a significant role in internal controls has been reported, and that all significant deficiencies and material weaknesses in a company's ICFR have been disclosed to that company's auditors and audit committee.  These provisions highlight the principal financial officer's key role in a company.

22.     Pursuant to Rule 13a-14(c), "[a] person required to provide a certification" subject to this rule, "may not have the certification signed on his or her behalf pursuant to a power of attorney or other form of confirming authority."

**III.    Viking's SEC Filings Misrepresent Yang's Education**

23.     Simeo provided Yang's unverified resume to Viking's outside counsel to use in drafting Yang's senior management biography that was included in Viking's public filings on Forms 10-K and 10-K/A identified in the chart at Paragraph 34 below.   The biography includes representations that Yang received a business degree from an international business school.

24.     These representations were false or inaccurate.  Yang did not receive a degree from the international business school identified in the Company's filings.  Viking, through Simeo, falsely gave the impression to the public that it had a financial professional with a business degree involved in its operations and financial reporting as its CFO.

**IV.     Yang did not Act as CFO From at Least November 2014 through May 2016**

25.     From at least the period of November 2014 to May 2016, Yang performed no substantive work as CFO for Viking.  Company records contain no communications between anyone at Viking and Yang from November 2014 through May 2016, let alone any communications relating to Viking's public filings during that period.  Viking's current CEO, who joined the Company in 2014, has stated that he never met or communicated with Yang.  An accounting consultant for the Company, and the Company's outside auditors, have also stated that they never met or communicated with Yang.

26.     Very few Company documents make any mention of Yang, and these documents imply that Yang played no role at the Company.  For example, in one email, dated April 28, 2017, an accounting consultant to Viking referred to certain "balances" that the Company's books and records showed as being owed to "Cecille [sic]" and another individual, and wrote "***whoever they are***" (emphasis added).

27.     In another email, dated June 30, 2016 (a week before the Company announced Yang's resignation), Simeo wrote to Viking's then-CEO, recommending that Simeo replace Yang as acting CFO of the Company, and stated, as one reason for why Simeo should assume the role of CFO, "I have previously been handling the filing's [sic] for years."

28.      Simeo failed to produce to the Commission's staff any written communications with Yang concerning Viking's filings between November 2014 and May 2016.

29.     Simeo and the Company produced to the staff of the Commission only one document – an email dated in 2013 – which purportedly reflected a communication from someone named "Cecile".  The email stated that "Cecile" would send Simeo her written signature to affix to a management representation letter to Viking's auditor.

7

30. Simeo signed each of the eight annual and quarterly reports that Viking filed between November 2014 and May 2016.

31. Yang's electronic signature appears on each of the eight annual and quarterly reports that Viking filed between November 2014 and May 2016.

32. Simeo's and Yang's electronic signatures also appear on the certifications made pursuant to Section 302 of the Sarbanes-Oxley Act and Exchange Act Rule 13a-14 that were attached to six company annual and quarterly reports from November 2014 through May 2016. Simeo affixed or, in at least one instance, directed a consultant of the Company to affix, Yang's typed signature to those certifications without Yang's written authorization.

33. Neither the Company nor Simeo produced any documents to the staff of the Commission showing that Simeo or Yang had evaluated the effectiveness of disclosure controls or internal controls over financial reporting.

34. The Company, through Simeo, falsely disclosed Yang as Viking's CFO in the following annual and quarterly reports:

| **Filing** | **Filing Date** | **Filing Signatories** | **SOX Certification Signatories** |
|---|---|---|---|
| 10-Q for the Quarterly Period Ended September 30, 2014 | 2014-11-14 | Simeo and Yang | Simeo and Yang |
| 10-K for the Fiscal Year Ended December 31, 2014 | 2015-04-03 | Simeo and Yang | Simeo and Yang |
| 10-Q for the Quarterly Period Ended March 31, 2015 | 2015-05-20 | Simeo and Yang | Simeo and Yang |
| 10-Q for the Quarterly Period Ended June 30, 2015 | 2015-08-19 | Simeo and Yang | Simeo and Yang |
| 10-Q for the Quarterly Period Ended September 30, 2015 | 2015-11-20 | Simeo and Yang | Simeo and Yang |
| 10-K for the Fiscal Year Ended December 31, 2015 | 2016-04-14 | Simeo and Yang | No SOX Certifications |
| 10-K/A for the Fiscal Year Ended December 31, 2015 | 2016-05-16 | Simeo and Yang | Simeo and Yang |

| Filing | Filing Date | Filing Signatories | SOX Certification Signatories |
|---|---|---|---|
| 10-Q the Quarterly Period Ended March 31, 2016 | 2016-05-27 | Simeo and Yang | No SOX Certifications |

35.     Viking publically disclosed that Yang was no longer at the Company in a current report on Form 8-K filed in July 2016.

## V.     Viking Sold Securities During the Relevant Period

36.     During the relevant period, the Company raised approximately $2 million from investors.  The Company sold promissory notes that also included common stock as part of the transaction, and also sold convertible redeemable promissory notes that could be converted to Viking common stock at the election of the note holder or redeemed by the Company.  These offerings and sales were made using stock purchase agreements, some of which were signed by Simeo on Viking's behalf.  These stock purchase agreements included the representation that Viking's periodic reports filed with the Commission were materially accurate.

37.     The Company's new CEO, who assumed that role in late 2014, acknowledged that the resignation of the CFO could create a "perception that there is a problem with the company if [she] just resigned."   Viking and Simeo continued to disclose Yang as the Company's CFO until after the securities described in the above paragraph had been sold.

## FIRST CLAIM FOR RELIEF
### (Sections 17(a)(1) and 17(a)(3) of the Securities Act)

38.     The SEC realleges and incorporates by reference each and every allegation in Paragraphs 1 through 37, inclusive, as if they were fully set forth herein.

39.     As alleged herein, Simeo, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by the use of the means and instruments of transportation and communication in interstate commerce and of the mails, knowingly or with reckless disregard for the truth:  employed devices, schemes, or artifices to defraud; and engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

40.     By reason of the conduct described above, Simeo violated Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and 77q(a)(3)].

**SECOND CLAIM FOR RELIEF**
**(Section 10(b) of the Exchange Act and Rule 10b-5)**

41.     The SEC realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 37, inclusive, as if they were fully set forth herein.

42.     As alleged herein, Simeo, directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or with reckless disregard for the truth:  (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated and operate as a fraud or deceit upon purchasers of securities and upon other persons.

43.     By reason of the conduct described above, Simeo violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Securities and Exchange Commission respectfully requests that this Court enter a Final Judgment:

### I.

Finding that Simeo violated the federal securities laws alleged in the Complaint.

### II.

Permanently enjoining Simeo and all persons in active concert or participation with him, from violating the federal securities laws alleged in this Complaint.

### III.

Ordering Simeo to pay a civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### IV.

Ordering that Simeo be barred from acting as an officer or director of any public company pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)].

### V.

Ordering that Simeo be barred from participating in any penny stock offering pursuant to Section 20(g)(1) of the Securities Act [15 U.S.C. § 77t(g)(1)], and Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)].

### VI.

Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the SEC hereby demands trial by jury.

Dated: Washington, DC
      August 18, 2020

By: *Olivia S. Choe*
Olivia S. Choe
Stephan J. Schlegelmilch

Division of Enforcement
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
(202) 551-4881 (Choe)
(202) 551-4935 (Schlegelmilch)
ChoeO@sec.gov
SchlegelmilchS@sec.gov

Attorneys for Plaintiff

Of Counsel:

Yuri B. Zelinsky
Laura D'Allaird